UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JENNIFER EASTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | No. 3:13-01372 |
| v. | ) | Judge Sharp |
| | ) | |
| ASURION INSURANCE | ) | |
| SERVICES, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

In this case, Plaintiff Jennifer Easter brings claims under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611 *et seq.*, the American with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Tennessee Disability Act ("TDA"), Tenn. Code Ann. § 8-50-103, against her former employer, Asurion Insurance Services, Inc. ("Asurion"). Pending before the Court is Defendant's Motion for Summary Judgment (Docket No. 13) which has been fully briefed by the parties (Docket Nos. 14, 15, 19, 20, 21 & 22). For the reasons that follow, the Court will grant the motion in part, and deny the motion in part.

## I. FACTUAL BACKGROUND

Plaintiff began working for Asurion as a Customer Service Representative on April 25, 2011. She first reported to Shawn Bean, and later reported directly to Robert Rowe, Asurion's Call Center Supervisor. Mr. Rowe, in turn, reported to Kathleen Peyton, Asurion's Operations Manager.

Asurion employees are provided an 8% monthly allowance for absences. That is, employees are not supposed to be absent more than 8% of their scheduled hours during any given month. When

1

employees are going to be absent, they are expected to notify their supervisor within one hour of the scheduled start time.[1]

Employees who exceed the 8% limit are subject to discipline. While Asurion retains the discretion to terminate an employee with poor attendance at any time, an employee who violates the attendance policy may first receive a Coaching Action Plan ("CAP") or an Attendance Coaching and Action Plan ("ACAP"). If the employee does not correct the attendance issues after receipt of one of those plans, the employee may be placed on a Performance Improvement Plan ("PIP"). If attendance issues identified in the PIP are not corrected, the employee may be terminated.

In the less that two years that Plaintiff was employed by Asurion, she was disciplined for attendance violations on nine separate occasions. Asurion issued Plaintiff (1) an ACAP on December 6, 2011, because her attendance percentage for November 2011 was 9.69%; (2) a PIP on January 11, 2012, because her attendance percentage for December 2011 was 8.08%; (3) an ACAP on April 9, 2012, because her attendance percentage for March 2012 was 8.62%; (4) an ACAP on July 7, 2012, because her attendance for the month of June 2012 was 13.08%; (5) an ACAP on October 5, 2012, because her attendance for the month of September 2012 was 15.62%; (6) a verbal warning on November 30, 2012, for failing to call in advance of her absence; and (7) an ACAP on January 4, 2013, because her absence for the month of December 2012 was 17.17%.

Plaintiff admits that she received all of these disciplinary actions. Plaintiff claims, however, that she told Defendant on numerous occasions that she was tardy to work, required to leave work early, or absent from work because of a serious health condition – irritable bowel syndrome ("IBS")

---

[1] Plaintiff asserts that, during her employment, Asurion reduced the call-in period from two hours to one hour without informing her, but, once counseled about the change, understood the policy.

2

and chronic stomach problems – and that she needed an accommodation from Defendant because of those conditions.[2] She further claims that her October 2012 shortfall was a result of IBS and a stomach bleed for which she received hospital care, all of which she explained to her supervisor. As for the November 30, 2012 warning for failure to call in, Plaintiff claims that she offered to work late to make up any time missed. With regard to the January 4, 2013 ACAP, Plaintiff asserts that the shortfall included time she was away from her work station taking bathroom breaks because of her IBS, and she so informed both Mr. Rowe and Ms. Peyton. According to Plaintiff, Mr. Rowe said that once an employee exceeds the 8% absence rate, "it didn't matter what the reason was," and Ms. Peyton said "there is nothing that we can do for you." (Docket No. 16-1, Pf. Depo. at 74).

On February 5, 2013, Plaintiff was placed on a PIP because of her attendance issues in December 2012 and because her absences for the month of January 2013 was 28.9%. This PIP was in place for the entire month of February. In the PIP, Plaintiff was instructed to "consistently focus on being here when scheduled and not leaving early or coming in late[,]" and warned that "[i]f the PIP is not successfully completed in its entirety then management has the discretion to consider the next steps up to and including termination of employment." (Id. at 76).

Plaintiff did not report for work on either February 26 or 28, 2013, resulting in her exceeding the 8% limit for that month. On Friday, March 1, 2013, Plaintiff mentioned to Mr. Rowe that she might apply for FMLA leave for the two missed days. Defendant claims that the stated reasons for the absences was that Plaintiff had a sore throat and sinus infection on those days.

---

[2] Plaintiff contends that she was diagnosed with IBS in December 2012. The record does not, however, contain any statement from a doctor indicating that such a diagnosis was made at that time. In fact, the only document from a medical provider that the Court can find in the record which mentions IBS is a Medical Certificate dated March 15, 2013, filed in conjunction with a request for unemployment benefits which indicates that Plaintiff was seen on three occasions between January and March 2013, and that Plaintiff was able to work without restriction. (Docket No. 16-1 at 64).

3

On Monday, March 4, 2013, Mr. Rowe, Ms. Peyton, and Amy Sutton from Asurion's Human Resources Department, decided Plaintiff's employment should be terminated because of her attendance issues and failure to improve under the February PIP. They met with Plaintiff the same day in Ms. Sutton's office.

According to Defendant, Plaintiff stated at the meeting that she wanted to apply for FMLA leave for the two February days due to sinusitis and a sore throat, and Ms. Sutton informed her that she did not believe those were qualifying conditions. In contrast, Plaintiff claims that, just as she had told both Mr. Rowe and Ms. Peyton in the past, she told Ms. Sutton that her absences were due to her IBS and chronic stomach problems, and that she needed an accommodation. Plaintiff also claims that she was instructed by Ms. Sutton to apply for leave through Defendant's third-party administrator which, at the time, was Unum Group.[3] According to Plaintiff, this was the first time that she was given any information on how to apply for FMLA leave.

Based upon Plaintiff's statements at the March 4, 2013 meeting, Defendant claims that the termination was placed on hold and Plaintiff was suspended pending resolution of her FMLA claim. Plaintiff insists that she was terminated on March 4, 2013, a claim which is supported by the deposition testimony of Mr. Rowe. In his deposition, Mr. Rowe testified that it was his understanding that Plaintiff was in fact terminated on the 4th, and that it was news to him that Plaintiff was actually terminated in April instead of March, as Defendant now claims. (Docket No. 16-2, Rowe Depo. at 29-30). Moreover, the Separation Notice that Asurion filed with the State of

---

[3] In her deposition, Ms. Sutton testified that Unum Group handled Asurion's FMLA claims in 2013, but before that they were handled by The Hartford Group. Plaintiff claims that when she discussed her IBS and chronic stomach problems with Mr. Rowe in December 2012, he told to her that he could not provide her with information as to how to apply for FMLA leave because Asurion was changing administrators and she should wait until January 2013 to apply with whoever the new administrator turned out to be.

Tennessee indicates that Plaintiff was employed from "4/25/11 to 3/4/2013." (Docket No. 16-1 at 76).

Plaintiff applied for FMLA leave for her sinusitis on the same day as the termination/suspension meeting. By letter dated March 5, 2013, from Unum, Plaintiff was informed that she was required to provide certification supporting her need for leave by March 19, 2013. When certification was not received by the due date, Unum notified Plaintiff that her deadline to submit the medical certification was extended by seven days to March 26, 2013. On March 29, 2013, Plaintiff was informed that her request for FMLA was denied for failure to provide a timely medical certification.[4] Asurion was also notified by Unum of the denial of Plaintiff's request for leave.

Meanwhile, on March 15, 2013, Plaintiff submitted a separate request for FMLA leave in connection with a colonoscopy that was performed on March 14, 2013. The "Certification of Health Care Provider" submitted by Dr. Ronald Pruitt indicates that Plaintiff had clinic visits on January 30 and March 6, 2013, and that she had a colonoscopy on March 14, 2103. Although the form does not describe Plaintiff's condition, it indicates that Plaintiff was first seen in 1997, seen again in 2004, and seen for the times listed in 2013. The form also indicated that "no further treatments" were expected and that Plaintiff was next scheduled for an appointment on March 14, 2018 (presumably for another colonoscopy).

On March 27, 2014, Plaintiff was informed by Unum that she was approved for intermittent leave from March 4, 2013 through March 14, 2013. By letter dated April 9, 2013, Plaintiff was informed that she was also approved for intermittent leave from February 26, 2014 to March 2,

---

[4]In a "Certification of Health Care Provider" signed on March 26, 2013, and apparently received by Unum on April 2, 2013, Dr. Andrea Beck indicated that Plaintiff was unable to work from February 26 to 28, 2013, because she was ill due sinusitis and her "symptoms included headache sinus congestion, facial pain, weakness/fatigue [and a] sore throat." (Docket No. 16-1 at 98).

2013.

On April 8, 2013, Unum sent Asurion an email regarding Plaintiff that stated:

Leave dates being approved: **2/26/13** through **3/3/13**.

The employee referenced above has a leave request that was previously denied on **3/09/13**. Since the denial, the employee has submitted a complete and qualifying certification/document. Their [sic] requested leave will be approved and retroactively designated as approved and protected.

(Id. at 126). Asurion responded, "Thank you. Jennifer was terminated as of 4/2." (Id.). Ms. Sutton claims that Asurion followed up by telling UNUM that Plaintiff was terminated after she failed to timely file FMLA paperwork, the matter was closed, and Unum had "reopened the claim in error[.]". (Docket No. 16-3, Sutton Depo. at 21). Ms. Sutton also claims that Unum assured Asurion that it would contact Plaintiff and inform her of the error regarding the granting of FMLA leave.

This lawsuit followed some eight months later.

## II. STANDARDS GOVERNING SUMMARY JUDGMENT

The standards governing summary judgment are well known. A party may obtain summary judgment if the evidence establishes there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Covington v. Knox Cnty, School Sys., 205 F.3d 912, 914 (6th Cir. 2000). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party, drawing all justifiable inferences in his or her favor. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## III. APPLICATION OF LAW

## A. FMLA Claims

The FMLA entitles eligible employees up to twelve weeks of leave for any of a number of reasons, including a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The Sixth Circuit "recognizes two distinct theories of wrongdoing under the FMLA." Bryson v. Regis Corp., 498 F.3d 561, 570 (6th Cir. 2007). "The 'entitlement' or 'interference' theory" makes "it unlawful for employers to interfere with or deny an employee's exercise of her FMLA rights" and "require[s] the employer to restore the employee to the same or an equivalent position upon the employee's return." Id. "The 'retaliation' or 'discrimination' theory, on the other hand . . . prohibits an employer from discharging or discriminating against an employee for 'opposing any practice made unlawful by' the Act." Id. (internal citations omitted). Plaintiff alleges both types of violation in this case.

### 1. Interference

"If an employer takes an employment action based, in whole or in part, on the fact that the employee took FMLA-protected leave, the employer has denied the employee a benefit to which he is entitled," Wysong v. Dow Chem. Co., 503 F.3d 441, 447 (6th Cir. 2007), and violated the interference prong of 29 U.S.C. § 2615(a)(1). "Because an employer interferes with an employee's exercise of FMLA rights whenever the employee does not receive the rights that are due to her under the statute, the intent of the employer is irrelevant to whether an FMLA violation has occurred under the interference theory." Wallner v. Hilliard, 590 F. App'x 546, 550 (6th Cir. 2014).

In this case, the Court finds that a genuine issue of material fact has been presented on whether Asurion interfered with Plaintiff's FMLA rights by failing to comply with the Act's notice requirements. Failure to comply with the applicable notice provisions can constitute interference

7

under the FMLA. Wallace v. FedEx Corp., 764 F.3d 571, 585-86 (6th Cir. 2014).

The applicable regulations provide that "[w]hen an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason, the employer must notify the employee of the employee's eligibility to take FMLA leave within five business days, absent extenuating circumstances." 29 C.F.R. § 825.300(b). Notably, the regulations speak in terms of whether an employee "may be" entitled to FMLA leave, and "'[t]he critical question is whether the information imparted to the employer is sufficient to *reasonably apprise* it of the employee's request to take time off for a serious health condition.'" Walton v. Ford Motor Co., 424 F.3d 481, 486 (6th Cir. 2005) (emphasis added) (quoting Brohm v. JH Props., Inc., 149 F.3d 517, 523 (6th Cir. 1998)). In this regard, "the employees burden is not heavy,"; in fact she "need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed," with the employer "'expected to obtain any additional required information through informal means.'" Wallace, 764 F.3d at 585 (quoting 29 C.F.R. § 825.303(b) (emphasis added)); see also, Aubuchon v. Knauf Fiberglass, GmbH, 359 F.3d 950, 953 (7th Cir. 2004). ("[W] emphasize that the employee's duty is merely to place the employer on notice of a probable basis for FMLA leave. He doesn't have to write a brief demonstrating a legal entitlement. He just has to give the employer enough information to establish probable cause, as it were, to believe that he is entitled to FMLA leave.").

Here, Plaintiff claims that she repeatedly told her employer that she had IBS and stomach problems that required her to miss work her to having to miss work, affected her ability to get to work on time, and impacted the time that she was at work due to the need for frequent bathroom breaks. She also claims that her pleas fell on deaf ears, although on one occasion, Mr. Rowe told her

8

to wait to request FMLA leave until the following year since Asurion was in the process of changing administrators. This is more than enough to place Defendant on inquiry notice that Plaintiff may have been suffering from a condition for which Plaintiff was entitled to FMLA leave.

That said, "the FMLA is not a strict liability statute," even under the interference prong, Edgar v. JAC Prod., Inc., 443 F.3d 501, 508 (6th Cir. 2014), and the Sixth Circuit has made clear that the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) paradigm applies "to both . . . interference and retaliation claims" under the FMLA, Donald v. Sybra, Inc., 667 F.3d 757, 762 (6th Cir. 2012). "Although an employer's intent is not directly relevant to the entitlement inquiry[,] . . . interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." Grace v. USCAR, 521 F.3d 655, 670 (6th Cir. 2008) (internal citation omitted) (quoting Edgar, 443 F.3d at 507). "If the defendant proffers such a justification, then the plaintiff may seek to rebut it by a preponderance of the evidence" which "show[s] that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.'" Id. (quoting Wexler v. White's Fine Furniture, 317 F.3d 564, 576 (6th Cir. 2003)).

As noted in the factual recitation, Defendant asserts that Plaintiff was terminated because she consistently exceeded the 8% limit for monthly absenteeism, and she did not meet the terms of her February 2013 PIP. Obviously, excessive absenteeism and failure to comply with call-in policies can be a legitimate non-discriminatory reason for discipline or discharge. Burdett-Foster v. Blue Cross Blue Shield, 574 F. App'x 672, 681 (6th Cir. 2014); Hill v. Air Tran Airway, 416 F. App'x 494, 499-500 (6th Cir. 2011). However, the essence of Plaintiff's interference claim is that

9

Defendant repeatedly ignored her statements that her absences, tardiness, and need to take numerous bathroom breaks were because of her IBS and chronic stomach problem, thereby pretermitting any consideration of whether she might be entitled to FMLA leave.

"Employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under no fault attendance policies." 29 C.F.R. § 825.220(c); see Demyanovich v. Cadon Plating & Coatings, L.L.C., 747 F.3d 419, 429 (6th Cir. 2014) ("If an employer takes an adverse employment action at least in part because an employee requested or took FMLA leave, the employer has denied an FMLA benefit."). And, "[t]he requirement that an employee 'take' FMLA leave . . . connote[s] invocation of FMLA rights, not actual commencement of leave," as "it would be patently absurd if an employer who wished to punish an employee for taking FMLA leave could avoid liability simply by firing the employee before the leave begins." Erdman v. Nationwide Ins. Co., 582 F.3d 500, 508 (3rd Cir. 2009); compare Donald v. Sybra, Inc., 667 F.3d 757, 762 (6th Cir. 2012) (emphasis added) ("an employer may prove it had a legitimate reason *unrelated to the exercise of FMLA* rights for terminating the employee.") with Gates v. United States Postal Serv., 502 F. App'x 485, 490 (6th Cir. 2012) (legitimate non-discriminatory reason for discharge where plaintiff could "have been terminated due to excessive unscheduled absences unrelated to his FMLA leave, regardless of the exercise of his FMLA rights or his compliance with [defendant] procedures related to FMLA leave"). In determining that Plaintiff's interference/entitlement claim requires resolution by the trier of fact, the Court acknowledges Defendant's argument that Plaintiff's claims regarding her employer's knowledge of her IBS and chronic stomach problems rests solely on her deposition testimony. Defendant argues that the Court should ignore this testimony because it is entirely "self-

serving."

But self-serving testimony is expected, and "a court may not disregard evidence merely because it serves the interests of the party introducing it." Harris v. J.B. Robinson Jewelers, 627 F.3d 235, 239 (6th Cir. 2010). Moreover, Plaintiff's testimony is no more self-serving than Mr. Rowe's deposition testimony that he does not recall any discussions with Plaintiff about her medical conditions or the change in FMLA carriers, or Ms. Sutton's testimony that she does not recall anyone ever telling her about Plaintiff's IBS, or her contention that Plaintiff never mentioned stomach problems during the March 4, 2012 meeting. While it appears that someone is outright lying, or at least has serious recollection issues, credibility determinations are quintessential a jury function. See Snyder v. Kohl's Dept. Stores, Inc., 580 F. App'x 458, 461 (6th Cir. 2014) (citation omitted) (on summary judgment "[a] court impermissibly invades the province of the jury it if it attempts to 'resolve[ ] issues of credibility and other conflicting evidence'"); Rogers v. Lilly, 202 F. App'x 423, 426 (6th Cir. 2008) (citation omitted) ("In ruling on a motion for summary judgment, '[t]he judge may not make credibility determinations or weigh the evidence'").

Summary judgment will be denied on Plaintiff's FMLA interference/entitlement claim.

**2. Retaliation**

Like an interference/entitlement claim, where a plaintiff presents no direct evidence of discrimination or retaliation, her claims are analyzed under McDonnell Douglas burden-shifting framework. See Edgar, 443 F.3d at 508. "[P]laintiff may make out a prima facie case by showing that (1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the adverse employment action and the protected activity." Bryson, 498 F.3d at 570. "If the plaintiff satisfies her prima facie showing, the

burden shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action." Id. "If the defendant succeeds, the burden shifts back to the plaintiff to show that the defendant's proffered reason is a pretext for unlawful discrimination." Id.

Here, Plaintiff's retaliation/discrimination claim fails at the causal connection stage of the *prima facie* case. Plaintiff asserts that she was terminated at the meeting on March 4, 2012, and the evidence is undisputed that Defendant had made the decision to fire Plaintiff for attendance issues before that date.

"Under the retaliation theory," as opposed to the entitlement theory, "the employer's motive *is* an integral part of the analysis." Edgar, 443 F.3d at 508 (emphasis in original). "The employer's motive is relevant because retaliation claims impose liability on employers that act against employees specifically *because* those employees invoked their FMLA rights." Id. (emphasis in original). While Plaintiff argues that there was temporal proximity between her termination and the invocation of her FMLA rights at the meeting so as to satisfy the causal connection, temporal proximity does not exist when the employer has already made the decision to terminate the employee. Grubb v. YSK Corp., 401 F. App'x 103, 113 (6th Cir. 2010); see also Farmer v. Town of Speedway, 2014 WL 5308093, at *10 (S.D. Ind. Oct. 15, 2014) (no causal connection for purposes of a FMLA retaliation case where employee mentioned the possible need to take leave FMLA after "the decision to terminate [plaintiff's] employment was already made"); Peda v. New York Univ. Hosp. Ctrs., 2014 WL 1013844, at *9 (S.D.N.Y. Mar. 17, 2014) ("no causation, since [defendant] had already made the decision to fire [plaintiff] before her request for FMLA leave"); LaFLeur v. Hugine, 2013 WL 5355035, at *5 (N.D. Ala. Sept. 24, 2013) ("The uncontradicted evidence is that plaintiff's medical leave had no bearing on the defendants' decision to terminate her

12

employment, because that decision had already been made").

Even assuming Plaintiff told Mr. Rowe at some point before the meeting that she was going to seek leave for the February 26 and 28, 2013 days because of sinusitis and/or a sore throat, her claim fails for at least two reasons. First, she has not established that she suffered from a "serious health condition" within the meaning of 29 U.S.C. § 2611(11), as things like a sore throat, "sinusitis, bronchitis, and an ear infection . . . are all routine, short-term illnesses not covered by the FMLA." Beaver v. RGIS Inventory Specialists, Inc., 144 F. App'x 452, 456 (6th Cir. 2005). Second, Plaintiff did not submit the certification within the time frame provided by Unum (even after being provided an additional grace period), and the failure to comply with the time limits for certification absolves an employer of liability under the FMLA. Kinds v. Ohio Bell Tele. Co., 724 F.3d 648, 652 (6th Cir. 2013); Frazier v. Honda of Am. Mfg., Inc., 431 F.3d 563, 567 (6th Cir. 2005)

To the extent Plaintiff's retaliation claim is based upon Dr. Pruitt's certification, that too fails for at least two reasons. First, the certification was in relation to a colonoscopy that was performed in April 2013, after Plaintiff was terminated (Plaintiff's position) or while Plaintiff was under a suspension after the termination decision had been made (Defendant's position). Second, Dr. Pruitt's certification does not indicate Plaintiff was incapacitated, undergoing continuing treatment, or otherwise met any of the requirement of serious health condition under 29 C.F.R. § 825.115(a)-(f). Rather, the form indicates that Plaintiff was seen in 1997, seen seven years later in 2004, and seen on three occasions nine years later in 2013. It also states that her "condition" (never specified on that form) did "not cause a full/continuous period of inability," nor was it "medically necessary for [plaintiff] to be off work due to episodic flareups on an intermittent basis or to work less than [her] normal work schedule." (Docket No. 16-1 at 66).

**B. ADA Claim**

In the absence of direct evidence, and as with claims under the FMLA, claims under the ADA are analyzed under the burden shifting approach. "To make out a *prima facie case* of employment discrimination through indirect evidence under [the ADA], a plaintiff must show that '1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced.'" Whitfield v. Tenn., 639 F.3d 253, 258-59 (6th Cir. 2011) (quoting, Macy v. Hopkins Cnty. Sch. Bd. of Educ., 484 F.3d 357, 365 (6th Cir. 2007)). "Once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason' for its actions." Talley v. Family Dollar Stores of Ohio, Inc., 542 F.3d 1099, 1105 (6th Cir. 2008) (quoting, Gribcheck v. Runyon, 245 F.3d 547, 550 (6th Cir. 2001). "If the defendant can satisfy its burden, the plaintiff must show by a preponderance of the evidence that the proffered explanation is a pretext for discrimination." Id.

The ADA prohibits covered employers from discriminating against a "qualified individual on the basis of disability" with regard to hiring, advancement, training, termination, and "other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "The plaintiff shoulders the initial burden of showing that he is disabled and "otherwise qualified" for the position, either without accommodation from the employer, with an alleged essential job requirement eliminated, or with a proposed reasonable accommodation." Turner v. City of Paris, 534 F. App'x 299, 302 (6th Cir. 2013) (citing, Kleiber v. Honda of Am. Mfg., Inc., 485 F.3d 862, 869 (6th Cir. 2007)).

Upon initial review, the Court was inclined to grant summary judgment on Plaintiff's ADA

claim. This was because:

- Plaintiff cites only her deposition testimony for the proposition that she was diagnosed with IBS in December 2012, but "Plaintiff's uncorroborated testimony [about diagnosis and treatment do] not raise a triable issue" on whether Plaintiff has a disability within the meaning of the ADA, Holmes v. Alive Hospice, Inc., 2015 WL 459330, at *4 (M.D. Tenn. February 3, 2015).

- Plaintiff cites E.E.O.C. v. Ford Motor Co.,752 F.3d 634 (6th Cir. 2014) for the proposition that IBS is a disability within the meaning of the ADA, but that case stands only for the proposition that that particular patient's IBS was disabling. Moreover, the decision was vacated and a rehearing *en banc* was granted on August 29, 2014, months before Plaintiff filed her response in this case.

- Assuming that Plaintiff does in fact have IBS and/or another stomach ailment, "merely having an 'impairment' does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity." Toyota Motor Mfg., Ky. Inc. v. Williams, 534 U.S. 184, 195 (2002) *abrogated on other grounds* by ADA Amendments Act of 2008, 42 U.S.C. § 12102(1), (2).

- Plaintiff does not indicate who made the diagnosis in December 2012, but it probably was not Dr. Pruitt because his FMLA certification indicates that he saw Plaintiff in January 2013 for the first time in seven years. Moreover, even if this is who Plaintiff claims to have made the diagnosis, his FMLA certification does not mention IBS, nor does it come close to suggesting that Plaintiff has "a physical or mental impairment that substantially limits one or more major life activities of such individual," 42 U.S.C.A. § 12102(a), even if "working" is considered the major life activity. While Dr. Pruitt's Medical Certificate filed in conjunction with Plaintiff's request for unemployment benefits (which apparently was contemporaneous with his FMLA certification) states that Plaintiff was seen in January and March 2013 for IBS, it also states that Plaintiff was able to work without restriction.

However, none of these possible shortfalls[5] in the proof are raised in Defendant's supporting Memorandum (so Plaintiff could not be expected to respond to them), and the ADA is not even mentioned in Defendant's reply brief. Rather, Defendant argues that Plaintiff was terminated

---

[5] Lest their be any misunderstanding, the Court is not saying that IBS is not a disability within the meaning of the ADA. Rather, while IBS can be a serious and debilitating condition which may substantially limit a major life activity, the Court cannot simply assume Plaintiff's condition is such. See, Deeds v. State Farm Mut. Auto. Ins. Co., 2012 WL 1150755, at *3 (M.D. La. April 5, 2012) (collecting cases) ("A number of opinions have addressed ADA claims premised on IBS, but the cases are fact-intensive[.]")

"because of" her attendance issues and failure to comply with the February 2013 PIP, and Plaintiff cannot show that the stated reasons were a pretext for discrimination.

Defendant's argument neglects to consider the fact that Plaintiff claims she requested more bathroom breaks and made other entreaties to Defendant in order to accommodate her IBS, but those requests were ignored. This suggest a failure to communicate in violation of what is contemplated by the ADA.

Under the ADA "[t]he term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position[.]" 42 U.S.C. § 12111(8). The governing regulations indicate that "[t]o determine the appropriate reasonable accommodation [for a given employee,] it may be necessary for the [employer] to initiate an informal, interactive process with the [employee]," in order to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). "Accordingly, '[t]he interactive process requires communication and good-faith exploration of possible accommodations.'" Kleiber, 485 F.3d at 871 (citation omitted). "Even though the interactive process is not described in the statute's text, the interactive process is mandatory, and both parties have a duty to participate in good faith." Id. (footnote omitted).

Here, when the facts are construed in Plaintiff's failure, a reasonable jury could conclude that Defendant wholly failed to engage in an interactive process and failed to make any effort to reasonably accommodate Plaintiff's condition. The Sixth Circuit has recently stated that "the failure to engage in the interactive process" can be "an independent violation of the ADA." Rorrer v. City of Stow, 743 F.3d 1025, 1045 (6th Cir. 2014). And, there can be no doubt that an alleged non-

discriminatory reason for termination is pretextual if the real reason is that the employer did not want to make a reasonable accommodation to a known disability.  See, A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ., 711 F.3d 687, 701-02 (6th Cir. 2013) (summary judgment inappropriate in ADA case where factual issue existed as to whether reports to Department of Children's Services were motivated by concerns for child's health or were a pretext for retaliating against parents for requesting accommodations); Bryson v. Regis Corp., 498 F.3d 561, 577-78 (6th Cir. 2007) (summary judgment inappropriate even though defendant claimed plaintiff was terminated because she failed to return from leave where questions of fact existed as "whether possible opposition to [plaintiff's] request for an accommodation was a motivating factor in her termination"); Lovell v. Champion Car Wash, LLC, 969 F. Supp. 2d 945, 955 (M.D. Tenn. 2013) (summary judgment not appropriate where "inquiry necessarily segues into the ultimate question of whether the reason proffered for the failure to transfer was but a pretext for retaliating against [plaintiff] for requesting an accommodation").

The Court will allow Plaintiff's ADA claim to go forward.  However, this claim may well be the subject of a viable motion for a directed verdict at the close of Plaintiff's case given the potential problems that the Court has identified.

## C.  TDA Claim

In a footnote to its Motion for Summary Judgment, Defendant asserts that it is entitled to summary judgment on Plaintiff's TDA claim for the same reasons that it is entitled to summary judgment on her ADA claim.  Plaintiff does not respond to that argument, and the only mention of the TDA in her response brief is the conclusory statement that Defendant violated the TDA.

The Sixth Circuit's "jurisprudence on abandonment of claims is clear:  a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary

judgment." Brown v. VHS of Mich., Inc., 545 F. App'x 368, 372 (6th Cir. 2013) (collecting cases). When a claim is abandoned, the district court can "properly decline[] to consider the merits of th[e] claim[.]" Hicks v. Concorde Career College, 449 F. App'x 484, 487 (6th Cir. 2011).

In any event, claims under Tenn. Code Ann. § 8-5-103(a) are "analyzed under the same principles as those utilized for the [ADA]," Sasser v. Quabecor Printing (USA) Corp., 159 S.W.3d 579, 584 (Tenn. 2004), with one critical distinction that is dispositive here: the TDA does "not include a 'reasonable accommodation' component." Bennett v. Nissan No. Am., Inc., 315 S.W.3d 832, 841-42 (Tenn. Ct. App. 2009). Accordingly, the Court will grant summary judgment on Plaintiff's claim under the TDA.

## IV. **CONCLUSION**

On the basis of the foregoing, Defendant's Motion for Summary Judgment will be granted with respect to Plaintiff FMLA retaliation and TDA claims, but denied with respect to Plaintiff's FMLA interference and ADA claims.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE